Section 1681 I requires that once a CRA, like Equifax, determines the outcome of a consumer dispute, it must promptly notify the consumer with the results, regardless of whether the disputed information was actually an act of the plaintiff. The plaintiffs, in this case, did not need the accuracy of the information of Equifax reporting about them, but Equifax failed to provide plaintiffs notice of their respective dispute results. The decision below should be reversed for two reasons. First, the decision below was contrary to Equifax's plain language and its statutory history because it holds that the prompt notice provisions turn on inaccurate reporting rather than substantive notice of dispute results. Second, the decision below was clearly erroneous because at summary judgment, Equifax produced no evidence that it sent plaintiffs notice of the results of the disputes at issue in this appeal. And to my first point, the prompt notice provisions turn only on whether the consumer disputed the accuracy of the CRA's reporting. Nevertheless, Equifax argues that this court should extend its holding in Carvalho to require an actual inaccuracy to establish that a CRA has a duty to provide notice in the first instance. Judge, I'm having trouble hearing you. Go ahead. I was having trouble hearing you, I said. Okay. That's better. I was seeing whether I had inadvertently muted myself. Can you hear me now? Yes. So, Carvalho was applying, first construing 1681I and applying it to the CRAA California law claims. And the California law claims in that case included failure to furnish notice. And Carvalho's under 1681I, you first have to make a prima facie case of inaccurate reporting in order to bring an action. And since that wasn't done in this case, and we think California would apply the same rule, the California law claims fail. And then they went on to say, and we agree with the court to amend your action, your complaint to raise any 1681I claims. So, given that the notice procedure was part of the California law claim that was rejected in Carvalho, how is that distinguishable from your case? Your Honor, it's readily distinguishable because in Carvalho, what the consumer received was the notice of results. What she disputed was the subsequent request that the CRAs provided with a detailed description of the reinvestigation procedures that the CRAs have used to complete their respective reinvestigations. Here, the plaintiffs didn't receive any notice of the results. And in the same vein, they certainly didn't receive any summary of rights, such as the right to request the underlying description, rather the description of the underlying reinvestigation procedures. And that's really in line, takes this case really in line with Syed and Ramirez. Even though they were disclosure cases, the issues in those cases was the failure to provide, at least in Ramirez, a summary of rights with a separate OFAC letter. And in Syed, the failure to separate the idea of consent from the idea of disclosure and provide those separately to the plaintiff in that case. If I understand your argument correctly, I just want to make sure I understand it. Although Carvalho had a broad statement, No. 1681, I claim, absent a prima facie case of inaccurate reporting. Because Carvalho did not address the specific subsection here, you're asking us to say it does not apply. Is that correct? That is correct. It's correct. I'm sorry. Go ahead. And it's correct because the issue in this case is separating the idea of notice from the underlying reinvestigation procedures that may result even if they are reasonable in inaccurate reporting. The prompt notice provisions do not inform the underlying reinvestigation. They operate to inform the consumer of the results of that reinvestigation and they convey substantive information to the consumer. That's what Congress sought when it amended the FICRA for the first time in 1996 to add the prompt notice provisions to require. Can I ask a question about this? And let me start by saying I agree with your plain text reading of the statute. But we have Carvalho. We also have Dennis. And Dennis tells us that a failure to investigate doesn't give rise to a cause of action unless the result was inaccurate, unless the credit report was inaccurate. So haven't we already departed from a plain textual reading of the statute and said that accuracy is the keynote? Well, yes, but that's holding in Dennis. And I think we could even track its roots to the Guimon decision. All of what ties Guimon, Dennis and Carvalho together and distinguishes them from this case is that they were concerned with whether a reasonable reinvestigation would yield a result in which inaccurate reporting was uncovered. Well, Dennis deals with a mandatory provision of the statute. You want an investigation, you get one. They didn't do one. And Dennis says in the absence of an allegation of inaccuracy, which is to say that the report was eventually inaccurate, it doesn't give rise to a cause of action. Here we have a reinvestigation rather than the initial one. Why doesn't Dennis's holding rather than Carvalho's bind us in this case? Maybe wrong, but why doesn't it bind us? And let me first start by taking us back to the plain language of the prop notice provisions themselves. 1681 IA3, under that provision, it does not matter whether the dispute is valid. Well, the issue here is whether the this by sending Carvalho and Dennis to the circumstances in this case that they run contrary to the underlying purpose of those amendments adding the prompt notice provisions in 1996. The prompt notice provisions may seem procedural in nature. Congress enacted them because they are the only practical way to protect consumers' interest in fair and accurate credit reporting by conveying the information Congress intended them to. The legislative history in the 96 amendments to FICA bears this out. In testimony before the House and in the Senate report on the final version of the bill, Congress established the prompt notice provisions to protect consumers' concrete interest in timely and responsive reinvestigations, which was a problem at that time. As well, Congress established those provisions to ensure notice when information was deleted, even where the reinvestigation proved the consumer's dispute to be incorrect. And so, to extend the actual and action-safe doctrine to a circumstance in which the CRAs need not respond if they determine a dispute privilege, irrelevant, or reporting correct information would run contrary to the underlying purpose of the amendments in 96 to give consumers greater access to information about the reinvestigations and their credit information. Even beyond that, the case of Ramirez v. TransUnion, along with Syed, support the idea that you might get some of the information you wanted, but it wasn't, as in Ramirez, it wasn't provided with the actual OFAC letter, the summary of rights. But they did get the summary of rights with the disclosure, the consumer disclosure that TransUnion had sent to the consumer separately. Here, the consumers didn't get anything. They got no notice of the results. But think about some of the provisions. Even Equifax's expert opined that some of the substantive information conveyed includes the notice of the consumer's rights, understanding whether the dispute was successful, an ability to determine whether the results are satisfactory, some sense of closure and rectifying credit file inaccuracy, and a description of the underlying reinvestigation. Even beyond that, I don't deserve the remaining 50 seconds, but I could go on forever, but let me just turn this over to counsel and we'll come back. Good morning, Your Honors. Before I begin, I'd just like to make sure I can be heard. We can hear you. Great. Thank you, Your Honor. May it please the court, my name is Ann Voights and I represent Equifax. No court has concluded that CRAs are civilly liable under 1681I to consumers who cannot and do not assert that there's an inaccuracy in their credit report. That's true for reinvestigation provisions, and it's equally true for the prompt notice provisions. Because this court addressed this issue in Carvalho, and in light of this court's holdings in Dennis, this court should affirm the decision below. I'd like to address a couple of the points that my friend across the aisle raised. First, with respect to the question about Carvalho, the issue there was that the contents in the attempt to distinguish it based on the content of what was provided as opposed to whether notice was provided at all. They are part and parcel of the same sub-provision, and so I think there is really no way to distinguish between the two when it comes to whether you should require an inaccuracy or not. I thought Carvalho involved a claim that the plaintiff was not given the notice of procedures, correct? So Carvalho involved a claim that there wasn't also an adequate explanation of what was done. But the plaintiff in that case was told of the results of the reinvestigation, correct? That is correct. But we think that there's no reason... I apologize, Your Honor. There may be no reason to distinguish. I don't know. That was my question. Is there a reason to think that somebody who never got a notice at all may have suffered a greater statutory injury than somebody who got a notice with an insufficient explanation? We think in either case, if there is no inaccuracy, then no. There's an absence of injury in both cases. And we think that the court's language in Carvalho controls here, but even if it didn't, there's a good reason why it should. Every case on which even the cases that plaintiffs rely has held that you have to have an inaccuracy both to establish civil liability under the reinvestigation provisions and then also turning to the prompt notice. And that makes sense when you look at the purposes that drive the FCRA. The purpose really is to prevent against the transmission of inaccurate information. That's really the concern that drives it. The prompt notice provisions are triggered by the existence of the reinvestigation provision, and they do do separate work. One can envision a case in which there's a reasonable reinvestigation, but an inaccuracy remains. And then the failure to provide prompt notice is a separate ground for liability. But where there is no inaccuracy, there's no justification for a consumer being able to seek to hold Equifax or any other CRA civilly liable. There are other enforcement mechanisms that apply regardless of whether there's an inaccuracy or not. The FTC and other agencies still have the ability to try and police that. But when it comes to the question of what should happen here, where a consumer tries to hold a CRA civilly liable, this judicial gatekeeping function applies with equal force in reinvestigation provisions and with respect to the prompt notice. My friend across the aisle refers to Ramirez, and I'd like to note that Ramirez in particular, this court noted that the nature of the inaccuracy in that case was severe. So that wasn't a case that actually supports a finding that this case should proceed. Because here there's absolutely no dispute that with both Barnum and with Sestrick, there was no ultimate inaccuracy in their credit reports. With respect to the question about whether Dennis Vines here, we would agree with you, Judge Hurwitz. We think that it does. This court shouldn't try to distinguish because the court's already decided the issue in Dennis. It's decided in Carvalho, and there's no reason to reach a different conclusion here. And again, I think plaintiff's counsel keeps referring to this as extending the inaccuracy doctrine. I don't think it is, in fact, extending it. The doctrine already exists. It applies to this provision here. Well, we've never applied it. You agree we've never previously applied it to this provision? I think if this court looks at language in Carvalho, it was faced with claims that were brought both under the prompt notice provision and under other provisions of the California Consumer Rights Act. And in analyzing it, this court looked to the FCRA. So the answer to my question is, no, this court has never previously applied that requirement to this particular provision, correct? Your argument that we should, I understand. I'm asking a factual question. Have we ever applied it to this provision before? I think if you disagree with our reading of Carvalho as applying it, then no. In Carvalho, they got notice of the reinvestigation. And so we couldn't have applied it to a claim in Carvalho that they didn't get notice of the reinvestigation results. Well, what they were looking at in Carvalho was a claim about the actual, you know, whether they had been given a notice that they were due, correct? I'm not sure it hurts your case, but factually, we've never dealt with a case in which the claim was that you didn't give me notice of the results of the reinvestigation. Is that a correct factual statement? That is. We would agree that in Carvalho, the issue really was with what was given and its adequacy as opposed to whether it was given at all. Let me ask a question I really wanted to ask, which I thought we'd get to quicker. We made up the accuracy doctrine, which is to say it's not in the statute. There's no language in the statute about accuracy. Given that it's a judge-made doctrine, why should we apply it to this provision? So, we think that it should apply to this provision because otherwise it unbalances the sort of statutory relationship between the reinvestigation provisions and the prompt notice provisions here. Those prompt notice provisions are triggered by the existence of the reinvestigation. And the core of the interest that the statute is intended to address is making sure that evidence is accurate, that the consumer reports are accurate. If there is no inaccuracy, then the key concerns that drove the enactment of the statute don't even come into play. So, when this court has thought in the past about whether something is, in fact, sort of a core harm, they've looked at whether the statutory provisions at issue were established to protect the plaintiff's concrete interests. And then whether the specific violations in this particular case would actually harm or present a material risk of harm to such interests. And it's hard to see how here, the fact that both individuals didn't get the letter. And I'd point out that, in fact, Barham, when she followed up, did get a letter, a second letter confirming the results of the reinvestigation. But when we're talking about what these specific procedural violations, whether they actually harm or present a material risk of harm, the interests of the statute we're designed to protect don't even come into play. So, in this particular case, what they're alleging doesn't come into the real area of concern of the statute. Could your client, if you prevail in this case, adopt a policy of never sending the results of reinvestigation to plaintiffs or to consumers? No, that is not our position. No, it's not your position. My question is, if you adopted that policy, would you face any liability as long as there was no allegation of inaccuracy? There would be the separate issue of whether it could be enforced by any of the other entities that are charged with enforcing the statute. I know, I know. That's not the question I asked. My question is, would you face any liability to the consumer if you simply adopted a policy that we're never going to do reinvestigations? If we're never going to do reinvestigations or if we're never going to? Well, let's try both. First, we're never going to do reinvestigations. It's something required by the statute, but as long as our initial investigation was accurate, we don't have to do a reinvestigation. Could you do that? So, they could do that if and not face civil liability in lawsuits brought by the consumers. They would face liability from the FTC and others. Your position is that a CRA... Judge Ikuti is speaking, I'm sorry. I'm sorry, Your Honor. In order to take a position, there would have to be confidence that you were 100% accurate in every case, even in an illicit consumer that there's an error. Absolutely. We would have to present an accuracy record. I'm sorry, Your Honor. I couldn't hear the last part of your question. That sort of record of 100% accuracy would allow you not to consider a claim of error. So, I think that sort of gets into the fact that the CRA isn't a strict liability statute. Even when it comes to reinvestigation, it simply requires a reasonable reinvestigation. So, there isn't liability for CRA, even where there is an inaccuracy. If, in fact, there's a reasonable reinvestigation, it still doesn't manage to necessarily cure it. The enactors of the SCRA and its subsequent amendments understood that there's a lot of information that comes in from data furnishers, that it is complicated to process it, and that mistakes do occasionally happen. The question is, when should civil liability attach when brought by a consumer? This is following up on Judge Ruhle's question. Judge Ikuda, once again, your mic's not working well. I'm sorry. I was just following up on Judge Hurwitz's... Can you hear me now? Yes. I'm sorry, counsel's shaking her head no. I'm sorry, I can't, Your Honor. I don't... Can our technical person help on this? Now I can hear you. Okay. I was following up on Judge Hurwitz's question as to whether Equifax could adopt a policy of not reinvestigating. And it struck me that Equifax would do that only if it was 100% accurate the first time. Otherwise, it would be at risk. It wouldn't have the accuracy protection. So I was asking you whether Equifax had 100% accuracy the first time, and I take it from your answer, the answer is no. I think that would be a fair response. Mistakes do happen, and that's why the FCRA is written the way that it is. That's why it's written as not imposing strict liability, and that's why courts, in looking at this, have limited the suits that can be brought by private plaintiffs to those where there's an actual inaccuracy. And they've left the larger task of enforcing the FCRA in cases where there aren't inaccuracies to the FTC, to the CFPB, and to other entities. I took you over your time, but I blame the microphone. Thank you, Your Honor. If there are no further questions, I'm happy to submit. We have a few seconds for rebuttal. You're muted again. Okay. Apologies, Your Honor. No, Your Honor. First, to the factual point that Mrs. Barnum eventually received her reinvestigation. That was only after she sent a subsequent dispute to Equifax informer that hadn't sent notice to her in the first instance. To the issue of what sort of liability Equifax faces, should the court extend the doctrine, it would only be liable for failing to provide notice of results where it unreasonably fails to uncover an inaccuracy on the back end of the reinvestigation. The FCRA, at the end of the day, and this comes from this court's decision in Guillemot, should be interpreted and construed broadly in favor of consumers. And to provide them with what 1681 I6A, or rather 6B of guarantees, a notice that they may request the description of the reinvestigation procedure, notice that the consumer has a right to add a statement that the item remains in dispute, and a notice that the consumer may request the CR provide notification of deletions, where there you have a correct outcome of disputed information to third parties pursuant to 1681 ID. All of those would be superfluous were the court to extend the doctrine in this case. That would deprive the consumers that summary of rights that provides significant benefits to consumers who can add notations of dispute only when the reinvestigation comes back to them. The opportunity to do that is not triggered beforehand. Neither is the opportunity to have, as in this case, Equifax did delete the AQUIN account from Mrs. Barnum, but she didn't receive the notice of results. She would have needed to receive those before she could take advantage of Romanet 5 under 1681 IAB, and ask that those would be provided to a creditor had she sought credit previous to her dispute. Then I'll conclude by simply saying that these provisions must be given their meaning, and that requires reversal. Thank you. I thank both sides for their arguments. The case of Robert Susskirk v. Equifax Information Services is submitted, and we will take a recess until 11 o'clock to hear our final case. Thank you. Thank you. This court stands in recess until 11 a.m.
judges: Ikuta, Hurwitz, Tagle